Opinion of the court by
Mr. Chief Justice Shamcey:
Morgan McAfee,-the appellee, instituted an action of ejectment in the circuit court of Washington county, for a tract of land containing two sections, then in possession of, and claimed by the appellants, and having recovered judgment, the defendants below appealed, and now urge a,reversal of the judgment on the ground of want of title in McAfee, and superior title in themselves. As the plaintiff ill ejectment must recover on the strength of title, we will first inquire into the sufficiency of McAfee’s title. Congress on the 20th of April, 1832, passed an act, entitled “ an act for the relief of Jefferson College, in the state of Mississippi.” By the first section, provision is made for the relinquishment of certain lands owned by the college in the state of Alabama. By the second section, the board of trustees was authorized to locate or enter, or cause it to be done, in tracts not less in quantity than two sections in one body, such a number ‘ of sections of the unappropriated land of the United States, within the state of Mississippi, as might be equal to the quantity relinquished by. the board, to be entered or selected before or after they had been offered for sale, the entry to be made with the Register of the proper district', who was required to issue a - certificate of entry in .such form as might be prescribed by the commissioner of the general land office. *761 The section concludes by declaring that such “ certificate shall vest a full and complete title to the land described therein in Jefferson college, and thereupon a patent shall issue.'”
The fourth section, authorizes the board to transfer the right of location either in whole or in part, and authorizes the person legally holding a deed of transfer, under the corporate seal of the college, to make the entry for the quantity transferred, and to receive a certificate from the Register of the land office of the proper district, to “ be issued to the legal holder of such deed of assignment, as the assignee of Jefferson College, and the title under such certificate shall be accounted and held as valid and complete as if a patent had issued therefor.”
McAfee introduced a certificate from the Register of the land office, at Mount Salus, Mississippi, purporting on its face to have issued in pursuance of the fourth section of the act of congress above mentioned, dated the 18th day of August, 1834, by which it is recited, that he having deposited a deed of transfer from Jefferson College, under the corporate seal of the' college, for the quantity of two sections of land, containing twelve hundred and eighty acres, more or less, did thereupon enter, as assignee of Jefferson College, the land therein mentioned, which is particularly designated by the proper numbers attached, to the legal divisions and subdivisions of the surveys, containing in the whole, thirteen hundred and twenty-three acres. The certificate then proceeds by making an absolute grant from the United Slates to McAfee, as assignee of Jefferson College, for the land so located. The act of congress under which it was granted was also read, and it was admitted, that Jefferson College had made the relinquishment required by the act, ánd that the defendants were in possession; and here the plaintiff below closed his testimony.
This certificate we deem amply sufficient as an absolute conveyance. Congress has undoubtedly the control of the public domain, and may at discretion adopt such means of disposing of it as may seem expedient. Usually the final grant to purchasers is made by patent, and this is done in pursuance of a general law, but it does not follow that there can be no other mode of disposing of it. It may be, and often is, granted by act of congress without patent, and such disposition effectually passes the legal *762 title. So the conveyance may be made by a, general or special agent appointed by law, or by law it may be declared what shall amount to a grant, or what shall pass the title. The patent is a mode prescribed by law, and its effect declared by law. The mode may be changed, both as to the officer who shall execute it, and the manner of doing it, and the effect or dignity of a title made according to any prescribed form, may be regulated and declared by congress. In this instance, the title under the certificate is declared to be as valid and complete' as if a patent had issued. No other title was provided in this description of cases, and this is in every respect equal to a patent.
But it is insisted, that although it be equal to a patent as evidence of title, yet that it should not prevail as against the. appellants, for several reasons: First, because the deed of transfer was for two sections or twelve hundred and eighty acres, and the certificate is for thirteen hundred and twenty-three acres. Hence it is said the Register transcended his authority, his power being but a special limited power, which should have been strictly pursued, and that the certificate’is therefore void. It is not conceded that the power of the Register was a special' limited authority, but it is believed that it was a general limited power, he being the officer appointed to receive all entries and. locations made in his district. If so, greater latitude might be properly exercised in performing the power. But even supposing his power to have been such as it is contended it was, still, there was no notation of it.
By the first section of the act, the college was required to relinquish by sectional numbers; and by the second section, the board of trustees was authorized to enter such a number of sections, or the legal subdivisions of sections, as might be equal to the number of sections relinquished. The grant to the college was for a certain number of sections, not of acres; and although six hundred and forty acres make the strictly legal complement of a section, yet we know as a matter of public notoriety, that it is perhaps not one section in ten that contains that quantity. Some contain more and some less, but they are sections nevertheless, being designated with greater certainty by number, township and range. By a general grant of a .section by its proper number, all the land in it would pass, notwithstanding it might *763 be described as containing six hundred, and forty acres. This rule is as applicable to the government as to individuals. It. is undoubtedly the true one hi this case, because it was an exchange of equal quantities of sections, according to the actual, surveys, without regard tó the quantity of acres they might contájn. • Had the college a right to enter the land located by McAfee ? It .undoubtedly had, and the assignee 'had ’the same right. If it were otherwise, the authority under,the, act to locate an equal quantity of sections of unappropriated land, was of necessity limited to such sections as contained six hundred and forty acres, or unappropriated land of a particular description.- Jefferson college transferred all the right to two sections as fully’as it-had acquired it. ‘ The deed of transfer was for two sections, containing twelve hundred and eighty acres .more, or less., It is plain this was intended to cover any surplus or, deficiency .that might be in the sections located. Quantity, when it is not the leading, object, and most -certain description in the giant, always yields to known boundaries, and the. sections surveyed under, the laws of Congress have known boundaries and legal designations, which cannot be varied. As an evidence • that the actual survey controls the number of acres in all public 'surveys and grants, the preemption laws of 1830 and ’54, which authorize the entry of “one quarter section, or one hundred and sixty acres,” have been uniformly held to justify the 'entry of a quarter section, or fractional division of á section, containing more than that number of acres. The certificate of the register being for two sections, according to their legal subdivisions, is in exact accordance with the act of ■'Congress. The assignee was authorized to enter in the manner prdvide'd, “ and in the quantity so transferred,” by which was evidently meant-the quantity of sections transferred. That is the sense'in which the word “quantity” is used throughout the whole act. ■ This objection to the’title of the'appellee is therefore not well founded. - .
It is further insisted, that the certificate was hot sufficient evidence of title, for want of proof that Jefferson College had by deed of transfer under the corporate seal, transferred, the right to locate two sections of land. To this it may be answered, that it is believed.to be the settled rule, that the existence of a patent is evi *764 dence that every thing has been performed which was necessary to its emanation. The register is an accredited officer, and it is to be presumed that he acted correctly! The deed of transfer was a matter of evidence to be laid before him.
The appellants claim the land in dispute by virtue of six different patents, bearing date subsequent to the certificate of the ap-pellee, which purport in the margin to be founded on pre-emption, certificates. At. the trial they offered parol proof, which it is said conduced to prove that these patentees, under whom they claim, had pre-emption rights to the land when it was entered by Mc-Afee, and that they, were asserting their rights; and hence it is insisted that the land was appropriated. This proof was rejected by the court, and this is assigned for error. The substance of the proof is, that prior to the year. 1S32, and from that time until the 19th of August, 1834, and afterwards, the individuals to whom these patents have since issued, “ were seated and severally settled on the lands in controversy,” and that prior to the 18th of August, 1834, they, claimed the benefit of the several acts of Congress in such cases provided, to enter and locate the land “so seated upon by them, within the time prescribed by law as pre-emp-tors;” and that McAfee had notice of their claims. That on the 18th of August, 1834, they were personally present at Mount Sa-lus, before the register of the land office, opposing the right of McAfee to enter, on the ground that the land -was appropriated, and that they had a right to enter the sarde under the pre-emption laws then in force. “And also, that they were then there with witnesses to prove their settlements and improvements on said lands, with money to pay for the same, which they insisted on doing before the said McAfee obtained his certificate, and had in the hearing and presence of said McAfee, demanded the right to do so of the register of the land office at his office.” The bill of exceptions was taken to the opinion of the court in overruling a motion for á new trial, and' if the testimony was material, it was improperly ruled out. By our statute, any party dissatisfied with the decision of the court in overruling a motion for a new trial, may embody the substance of all the testimony in a bill of exceptions, and take his writ of error. So when testimony is ruled out, the substance of it at least must be set out, so that the appellate *765 court may know what the party has been deprived of. Smith v. Natchez Steam Boat Company, 1 Howard, 495. We are, therefore, to suppose that the facts intended to be proved are- here set out, and their materiality is the question.
By the act of Congress of the 29th of May, 1830, every settler or occupant of public land prior to the passage of the act,, who was then in possession, “ and cultivated any part thereof in the year one thousand eight hundred and twenty-nine,” was authorized. to enter with the register, at the minimum price, one quarter section, to include his improvement. By the third section, it was provided that before such entries should be allowed, proof of settlement or improvement should be made to the satisfaction of the register and receiver of the proper district, “ agreeably to the rules to be prescribed by the commissioner of the general land office for that purpose.” This act remained in force one year after its passage. By the act of the 19th of June, 1834, every settler or occupant of the public land who was then in possession and who had cultivated any part thereof in the year one thousand eight hundred and thirty-three, was declared to be entitled to all the benefits and privileges provided by the act of the 29th of May, 1830, which last mentioned act was thereby revived, to continue in force two years. Under this act possession of the land at the time of its passage, and having cultivated any part, thereof in the year 1833, gave to such possessor a pre-emption right to one quarter section, to include his improvement. Neither possession alone, nor cultivation alone conferred the right, but both were requisite. Such is the obvious meaning of the act, and so it was understood and enforced by the commissioner of the general land office. See his instructions, 2 Land Laws, p. 589. By the third section of the act of 1830, the proof of settlement was directed to be made to the satisfaction of the register and receiver of the district. Proof made to either one of them was not a compliance with the law. They were authorized to adjudicate jointly on the right of the applicant. On this subject the instructions above referred to are explicit. The commissioner of the general land office says to the register and receiver that cultivation in 1833, and possession of the land on the 19th of June, 1834, “must be established by the affidavit of the *766 claimant, supported by such corroborative testimony of disinterested. witnesses as shall be. satisfactory to both of you.” Thus we see what was necessary to entitle a claimant to a pre-emption right, and how it was to be consummated. Did these claimants bring themselves within the law ? The proof oifered to the court was, that these individuals £e were seated and severally settled on the lands in controversy.” I need not argue that this did not prove cultivation. It is not every one who is settled on land that cultivates it. The one does not necessarily embrace the other. Cultivation being necessary, should have been proved, and not left to inference; and especially not to an inference so remote as it is in the present case. Even supposing- then that a claim coming strictly within the pre-emption law, would be an entry or appropriation which would connect itself with the junior patents, and by that means overreach the elder one, still this testimony shows no such entry or appropriation, and consequently the younger patents derive no extraneous aid from it. We do not wish to be understood as deciding that a court of law can in this state, look beyond the patent “ and examine the progressive stages of title from its incipient state.” Such may have been the practice in this state, and such it seems to have been understood to be by the Supreme Court of the United States in the case of Ross v. Borland. We are not aware that it has been so directly adjudicated as to make it authoritative.
It is also insisted that the court erred in ruling out the testimony, because it conduced to prove fraud in the procurement, of the certificate. The proof which the pre-emption claimants offered to make to the register in support of their claims, is relied on to support this position. By the bill of exceptions it appears that on the trial a witness was introduced to show what proof the parties had offered to make to the register. Whether the register.acted improperly in refusing to receive it, must of course depend upon its sufficiency to establish a pre-emption right. It appe'ars that they were present before the register urging their claims, “ with witnesses to prove their settlements and improvements on said land, with money to enter and pay for the same.” Now if this was all they offered to prove, and we mus.t suppose it was, the register was perfectly right in refusing to allow them *767 to enter the lands. Proof of «-settlements and improvements” was no'proof of occupancy at the passage of the act and cultivation in 1833. They may have made settlements and improvements, and abandoned them; or they may have been made after the’ passage of the act; or made without cultivation. We have ■already said that possession when the act passed, and cultivation in'1833, were both necessary. It was not improper in the register to refuse to receive any proof as sufficient which stopped short of the legal requisites. But suppose they had offered to bring themselves within the law by proving both, still they fail in showing fraud, because the proof should have been addressed to the register and receiver both. Both were required to decide on it.’ If this view of the subject be correct, we cannot perceive how the testimony conduced to prove fraud, since the proof was insufficient to establish-a right, and the register acted correctly in rejecting it. Having no right, they could not have been defrauded. Their mere unsupported claim was no evidence whatever, that they were entitled to the benefit of the pre-emption law. Now although the court ruled out' the testimony and gave as a reason that fraud could not be proved at law, and although we may differ with the court in the reason assigned, yet we must approve the act. It is not the reasoning of the court that we are to correct, it is its acts. And inasmuch as the testimony did not conduce to prove fraud, We think it was properly ruled out.
If this view be correct, the certificate is relieved from the objections, and the younger patents are unaided by a prior entry, and the two titles stand opposing each other on their intrinsic merits only. In this attitude the oldest must prevail.
The foregoing remarks cover all the grounds taken in the assignment of errors, and in the arguments of counsel, so far as they are fairly presented by the record, which has been scrupulously examined in order to give the arguments their due weight. If it had been made appear by the evidence offered to be introduced that the patentees were entitled to pre-emption rights, then we should have been called on to decide as to the validity and effect of such right, when consummated by patent,'contending against an older patent, and whether the remedy was at law or equity. If the proper proof had been offered to. the register and receiver, *768 then we should have been called on to decide the question of fraud, and whether that was an enquiry to be made at law or in equity. -But as we can know nothing of the case except from the record, and as the record does not present these questions, we cannot adjudicate them. We have been more particularly scrutinizing in our examination of the merits presented by the record, in order to account for the existence of the junior patents, but it is not sufficiently explained. They can only be accounted for on one of two suppositions;'either that they were improvidently issued, or that the case is susceptible of more testimony than has been laid before us. If the former supposition be the true one, no harm is done; and if the latter, then the case is still within the reach of an appropriate remedy. But our view of the bearing of the testimony and the whole case made out by the record may be wrong, and that of the counsel for the appellants right; if so, there is a tribunal before which the error may be corrected.
The judgment must be affirmed.